[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
CT Page 14759
This matter first came to the court by virtue of summons and complaint, which complaint was dated February 9, 1999 and returnable March 9, 1999, in which complaint the plaintiff petitioner sought a dissolution of the marriage, alimony, custody of the minor children, support for the minor children, an equitable division of the marital estate, exclusive possession of the family residence located at 4 Terrace Avenue in Niantic, an assignment of the defendant's interest in and to the jointly owned real estate located at 4 Terrace Avenue, Niantic, an allocation of debts, an allowance to prosecute and such other relief as seen fair and equitable.
Accompanying the complaint was a pendente lite motion for alimony, custody and support, exclusive possession of the family residence and an allocation of debts. The usual case orders accompanied the complaint with the return of the sheriff attached thereto.
On March 31, 1999 the defendant appeared by counsel.
On April 8, 1999 further motions regarding alimony, custody and support, and exclusive possession were filed with the court.
On April 14, 1999 an answer to the complaint and a cross complaint was filed by the defendant and in the cross complaint the defendant requested a dissolution of the marriage, an order concerning custody of and access to the minor children, equitable division of all real and personal property and such other remedy as at law or equity may appertain.
Accompanying the answer and the cross complaint was a motion on behalf of the defendant for a pendente lite order as to custody and access to minor children.
On June 9, 1999 a further motion regarding alimony, custody and support and exclusive possession was filed by the plaintiff.
On July 6, 1999 a certain stipulation was approved by the parties and their counsel as concerns matters of physical custody and access concerning the minor children.
This stipulation also concerned itself with an agreement whereby the defendant turned over to his counsel the sum of $13,000.00, funds that had been on deposit with the Chelsea Groton Savings Bank to be held by counsel pending an orderly resolution of the matter.
On August 19, 1999 the plaintiff filed a motion with regard to the contemplated purchase of a new motor vehicle. CT Page 14760
On September 13, 1999 a further stipulation by the parties and their counsel was filed pertaining to the filing of a joint income tax return, an agreement whereby the plaintiff was to undertake making applications for employment, matters pertaining to issues involving the children and family services and the stakeholder as to the aforementioned $13,000.00.
On September 21, 1999 a motion to refer this file to Family Services pendente lite was filed.
On September 22, 1999 a motion to limit visitation pendente lite was filed by the plaintiff and on September 29, 1999 the plaintiff filed a further motion for alimony, custody and support.
On October 20, 1999 the plaintiff again filed a further motion for alimony, custody and support.
On November 3, 1999 new counsel appeared on behalf of the plaintiff petitioner and on December 3, 1999 new counsel for the plaintiff filed a motion for custody and support, which was granted by the court on February 1, 2000.
On January 19, 2000 the plaintiff filed a further motion for pendente lite alimony which was granted by the court, Corradino, J., on February 1, 2000 to the following effect: unallocated sum for alimony and support to be in the amount of $560.00 per week with the three minor children to be dependents of the plaintiff petitioner wife.
On January 31, 2000 both of the parties filed financial affidavits with the court.
Incident to a motion filed, there was a stipulation undertaken by the parties on March 13, 2000 whereby the defendant husband agreed to enter into counseling and certain terms and conditions incident thereto.
On November 15, 2000 and November 16, 2000 the plaintiff and the defendant with their respective counsel and their witnesses appeared before the court and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff's maiden name was Mary Scalera.
The plaintiff and the defendant were joined together in marriage on August 21, 1983 at the Town of East Hampton. CT Page 14761
Both parties have resided continuously in this state for more than twelve months prior to the filing of the petition.
The marriage between the parties has broken down irretrievably with no reasonable prospect for reconciliation.
There are three minor children issue of this marital union as follows: Robert Xavier Heath, born March 17, 1989, Matthew John Heath, born August 25, 1991 and Peter Randall Heath born August 1, 1993.
No other minor children have been born to the plaintiff wife from the date of the marriage to the present time.
Neither of the parties have been recipients of welfare from the State of Connecticut or any town, city or municipality or any subdivision thereof.
The parties have been separated since January of 1998.
The plaintiff is age 45. She describes her health as follows: that she is emotionally and psychologically exhausted. The plaintiff indicated that she experiences problems with her back, that she is on many occasions depressed, anxious and scared.
The plaintiff has nerve damage in one leg as a result of injuries sustained in 1988 in an accident while working for United Parcel. This was the left leg and resulted in a permanent partial disability.
The plaintiff received $10,000.00 in 1989 incident to the injury settlement. The monies, the plaintiff testified, were used for family purposes.
The plaintiff testified that she experiences back pain, particularly in her lower back. The plaintiff has been treating with a physician for back pain.
The plaintiff, prior to her injury, worked for United Parcel Service for ten years. This employment ceased in 1987-1988, when the plaintiff became pregnant with the oldest child, Robert.
The plaintiff had been involved in a car accident in 1988, that resulted in these back problems. She received by way of settlement $40,000.00 as concerns this injury, a reduced amount after costs and attorney's fees. These monies allowed for a down payment on a home which was in part provided from funds from this settlement. This home has unfortunately subsequently been foreclosed. The home was located at 4 Terrace Avenue in Niantic. CT Page 14762
After her accident the plaintiff worked in the Town of Old Saybrook at a diner as a waitress. She was there for five years on and off. The plaintiff has not worked on a full-time basis since the birth of her son Robert.
In addition, the plaintiff on occasion worked at night and also worked at a tailoring shop, five or six hours a week.
The plaintiff now works 25 to 30 hours a week at $7.50 an hour at a bakery. The plaintiff's job skills by education were only through graduating from high school.
All three children issue of this union are in school. The child Peter is in the second grade, Matthew is in fourth grade and Robert is in the sixth grade. The plaintiff picks the children up after the completion of their school day in the afternoon.
The defendant had a daughter from a prior marriage who is now age 22 and during the pendency of this marriage paid support incident to said child.
The plaintiff testified that she also endeavored to assist this child although it was not one of her own during the term of the instant marriage.
The plaintiff testified that at the time of their marriage in 1983 that the defendant was paying child support as concerns the aforementioned daughter of the defendant in the amount of $125.00 a week.
At the time that the plaintiff left her employment with United Parcel Service she was earning in the range of $35-$40,000.00 annually.
As noted earlier, the parties separated in January of 1998 when, according to the plaintiff, "he walked out".
There were a variety of problems in the marriage. The plaintiff testified that the defendant provoked arguments and that the defendant drank to excess.
The plaintiff testified that there were numerous phone calls to the residence where the parties hung up. The plaintiff's position being to the effect that, these were female friends of the defendant.
The plaintiff testified that the defendant kept late hours and that he engaged in excessive drinking with some of his male friends. CT Page 14763
The plaintiff testified that alcohol was a continuing problem in the marriage.
The plaintiff testified that she had difficulties in maintaining financial stability in the home. She testified that the defendant gave her $300.00 a week and "took the bills" but didn't pay them. On one occasion the electricity was shut off at the home and the motor vehicle she was operating was operated without proper insurance.
In January of 1999 the plaintiff and the defendant filed petitions in bankruptcy.
In due course the plaintiff was ejected from the aforementioned home. This was incident to a November 1999 notice of ejectment that was served on the plaintiff.
The plaintiff had been desirous of trying to save the home from foreclosure and represented that the defendant continued to tell her that she would never lose the home and that he was going to reinstate the mortgage.
On one occasion the defendant, according to the testimony of the plaintiff, withdrew $12,000.00 from funds that he had to be used allegedly for reinstatement of the mortgage but were never used for that purpose.
There is at present apparently the sum of $6,870.00 left from the aforementioned $12,000.00. At the time of the ejectment from the home premises, the plaintiff was only accorded a period of two weeks to find other suitable quarters for herself and the children.
The plaintiff testified that on the basis of what she presently receives pursuant to pendente lite orders that she is just barely able to get by.
The plaintiff testified that because of the cramped nature of her present accommodation for herself and the three boys that she was obliged to put the former furnishings and accessories of the home in storage at a weekly cost of $46.19.
Plaintiff presently resides in a two-bedroom condo with herself and the boys and those accommodations cannot accommodate the furnishings which are in storage.
The plaintiff is operating a vehicle, admittedly provided by the defendant, which she says is ten years old and has over 100,000 miles thereon. CT Page 14764
Incident to the children attending school, the testimony was to the effect that as to one child, the school is no farther away than five minutes in time, and as to another, fifteen minutes. Public transportation is provided for the oldest child. The plaintiff drives the two youngest children to school and at present, the plaintiff has no daycare costs.
The plaintiff, incident to questions put to her by counsel for the defendant, reaffirmed the nerve damage to her left leg and that it was permanent. This nerve damage has to do with the inside of and instep of the left foot and to the ankle bone. The testimony was to the effect that the plaintiff has no feeling in this foot.
The plaintiff is not presently treating for back problems. The plaintiff has not applied for social security benefits.
The plaintiff does not currently take medication with regard to pain.
The plaintiff's position is to the effect that she is not able to apply for jobs or positions due to the requirement of caring for three young boys.
At the time of her employment with United Parcel, the plaintiff had "been a member of the Teamster's Local Union. The plaintiff has not of late registered with any employment agencies incident to finding other more advantageous employment.
The plaintiff intends to stay at the position that she has at the Village Bakehouse even though her income is modest.
The plaintiff acknowledged the need for her acquiring greater skills but feels that her paramount interest is the proper supervision and raising up of the three boys.
The plaintiff possesses no credit cards.
The defendant provides clothing contributions for the children.
The plaintiff acknowledged that her conduct had not always been perfect and that she had faults.
The plaintiff attributes the breakdown of the marriage to the affair undertaken by the defendant.
At one point in time in 1991 or thereabouts, the plaintiff was involved CT Page 14765 in a catering business.
At another point during the marriage the plaintiff loaned the defendant $5,000.00 from her funds for the initiation of a tire business.
The plaintiff's testimony was to the effect that the defendant earned between $70-$72,000.00 annually, admitted that he has worked his way up to his present position.
The plaintiff acknowledged that in past years during the life of the marriage that both of the parties had consumed alcohol and engaged, at least in a moderate way, with controlled substances.
The plaintiff feels particularly aggrieved by what she feels is deception by the defendant as concerns his representations that he was reinstating the mortgage.
The plaintiff's parents help her on a monthly basis even though they are of advanced age.
The plaintiff acknowledged that some of the furnishings and accessories in storage perhaps may have to be sold. She hopes in due course for a larger home.
The plaintiff is agreeable to having the phone and cable service transferred into her name solely and is mindful of the 2000 penalty as concerns funds withdrawn by the defendant from his 401 K.
When the plaintiff, after her injury, left United Parcel, she withdrew from union membership.
The plaintiff's position and testimony is to the effect that the care of the children and their activities in schooling require her being a full-time parent.
The plaintiff complained that during the pendente lite orders that the defendant would not utilize the visitation to which he was accorded.
The plaintiff testified that the plaintiff's parents and her brother were presumably in a position to help her to save the house but because of the actions of the defendant she was unable to resort to this source.
As indicated, the plaintiff's parents do in fact help her on a periodic basis.
The plaintiff acknowledged that the defendant had apologized to her for CT Page 14766 the affair in which he was involved.
The plaintiff indicated that the three children are angry and upset due to the loss of their home and being required to live in the cramped quarters of their present residence.
The plaintiff indicated a willingness in the near future to try to take such educational courses as might better her position.
The plaintiff lamented that the vehicle which she presently drives, in her words, "was not roadworthy".
The plaintiff's parents made available to her $7,000.00± incident to paying for counsel fees.
The witness Nancy Hallquist testified in the proceedings.
This witness testified that she was currently residing with the defendant. She first met him in the Spring of 1993. This witness at that time was working at a credit union.
There has been an intimate relationship between the defendant and this witness from September of 1995 to the present time.
This witness testified that she would see the defendant once a week for a relatively short duration and since June of 1998 the defendant and this witness have resided together.
In November of 1995 the defendant suffered a heart attack.
The witness testified as to the arrangement for the defendant and herself for coming together but the court feels that is not necessary to dwell on this testimony.
The witness Hallquist resides on the Boston Post Road and she testified that the defendant pays her $100.00 a week plus $200.00 from bonus payments that he may receive.
The witness testified as to her monthly expenses. The defendant and witness Hallquist took two vacation trips together; on one occasion going to California.
This witness testified that she on occasion gives gifts to the defendant.
The witness Hallquist testified that there were some heated or intemperate words that passed between herself and the plaintiff but this CT Page 14767 of course is understandable.
The defendant Randall P. Heath testified in the proceedings. He is employed by Mallon Chevrolet as the business manager.
He draws a salary of $600.00 weekly, plus a $250.00 draw against bonuses . . . Once a month bonus checks arrive as concerns his commission relationship with his employer.
In 1998 his income was $74,000.00. In 1999, $76,580.00. The defendant has been employed at Mallon Chevrolet for at least ten years and in addition to his compensation he gets a used car that he is privileged to operate.
He has a life insurance policy in the amount of $20,000.00 incident to his position and is willing to maintain that for the benefit of the children.
In addition, the defendant also has a $100,000.00 life policy for accidental death and dismemberment, which he is willing to have the children named as irrevocable beneficiaries.
The defendant has a 401K with Mallon Chevrolet. Medical coverage is provided for his children incident to the defendant's employment. The plaintiff is also presently covered.
The defendant is age 50. He indicated he had heart bypass surgery in 1995. He testified that he has high blood pressure.
His education extended through graduating through high school. In addition, the defendant secured a two-year certificate from Auburn College in 1973.
The defendant has a modest Chelsea Groton Savings Bank checking account.
The defendant acknowledged to some extent alcohol was a problem in the marriage and that substance abuse was a problem.
In the past there was on one occasion an incident where the defendant was charged with operating under the influence.
The defendant acknowledged his relationship with the witness Hallquist.
The defendant testified that last month the automobile dealership by which he is employed did $200.00 worth of repairs to the vehicle that the plaintiff is entitled to operate. CT Page 14768
Further, the defendant indicated that the sum of $400.00 had been spent earlier to refurbish and make the vehicle safe for operation.
If on any occasion the vehicle that the plaintiff operates is in need of attention or service, the defendant provides a rental vehicle for her.
The defendant testified that the total weekly amount of his contribution to the Hallquist residency is in the amount of approximately $150.00.
The defendant takes medication for his high blood pressure. He sees a cardiologist; he sees Dr. Grabel, for psychiatric counseling. He sees Dr. Grabel every two weeks and the co-pay incident thereto is $20.00 for each visit. The defendant suffers from panic attacks.
The defendant's testimony was to the effect that he no longer drinks any strong liquor but only an occasional beer. He acknowledged that he had used substance controlled matters during the marriage but apparently no longer does so.
The defendant verified the trip to San Francisco with the witness Hallquist.
The defendant testified that at the time of the purchase of the marital home that the down payment thereon had been $10,000.00.
He testified that he felt that he was unable to meet the terms and conditions of the mortgagee bank, Norwest, in terms of the amount necessary to cure the principal default plus increased monthly payments. The mortgage foreclosure took place during 1999.
The defendant testified as to his work schedule which apparently is to the effect of hours of 9:00 a.m. to 8:00 p.m. and 9:00 a.m. to 5:00 p.m. on Saturdays, Thursday is his day off, as well as Sunday.
The property at 4 Terrace Avenue, Niantic, that was purchased in 1991 as the family residence cost $119,000.00. As noted above, the deposit at that time was $10,000.00. At the time of the foreclosure, the debt was $102,000.00. The mortgage allegedly was delinquent 12 months when the foreclosure was started. It was the defendant's position that he gave a sufficient sum each month or each week that would have allowed for the payment of the bills including the mortgage.
The defendant was represented in matters pertaining to the foreclosure by CT Page 14769 Attorney Arnold.
For purposes of reinstatement, it was represented that the mortgagee bank Norwest would require the sum of $16,000.00 plus the monthly payments for the ensuing our or five years would be $2,500.00.
Some portion of the aforementioned $13,000.00 being held in escrow by counsel was used at the time the plaintiff was required to move and for securing a new residence for herself and the boys.
There was apparently also a second mortgage on the 4 Terrace Avenue property wherein the monthly payment thereon was $200.00 a month. This obligation was discharged in the bankruptcy petition.
The defendant indicated that his health was generally good although he suffers from depression with regard to matters pertaining to the children.
The defendant testified as to problems in the marriage pertaining to a lack of communication between the parties and a lack of matters of intimacy.
The defendant's testimony was to the effect that problems occurred in the marriage as soon as the parties were engaged in their honeymoon.
The defendant has sought marriage counseling and feels that the parties were not really suited to each other.
The defendant felt that the physical or intimate side of the marriage always constituted a problem.
He acknowledged the failure of the aforementioned tire business.
Before his present position, the defendant had been involved as a salesman for automobiles. He was at Quality Oldsmobile for three years, M.J. Sullivan for two years. As noted, he has been at Mallon Chevrolet for ten years.
The defendant testified that the plaintiff looked upon the nature of his employment in a negative vein.
The defendant testified that on occasion months would go by without the parties speaking one to the other.
The defendant acknowledged playing a role in the breakdown of the marriage. CT Page 14770
From the exhibits and the dissolution of marriage form, the court makes the following findings.
This is the second marriage for the husband and as indicated his education extended through two years in college. The wife's education extended through completing high school.
An unmarked plaintiff's exhibit is entitled "Motion for Stay of Execution of Ejectment Ex Parte," filed by counsel for the plaintiff endeavoring to forestall the ejectment without success.
Plaintiff's Exhibit 1 is the settlement statement concerning the purchase of the property at 4 Terrace Avenue, in East Lyme, indicating that the contract sales price was $115,500.00.
The mortgage at that time was held by GMAC Mortgage Corporation.
Plaintiff's Exhibit 2 is a voluntary petition filed by the plaintiff and the defendant in the United States Bankruptcy Court. The parties were represented by Attorney L.J. Arnold, III.
The summary of schedules on the bankruptcy petition indicated that the total assets of the parties amounted to $146,750.00 and the total liabilities $171,922.00.
Schedule D in the bankruptcy petition entitled "Creditors Holding Secured Claims" indicates that the GMAC mortgage was a second mortgage in the amount of $10,000.00 and that Norwest Mortgage in care of counsel was $110,000.00.
Schedule F, Creditors Holding Unsecured and Nonpriority Claims in said exhibit show that the total amount of the claims was to the amount of $50,522.00.
See also Plaintiff's Exhibit 3 as concerns the Motion for Stay of Execution of Ejectment Ex Parte.
Plaintiff's Exhibit 9, State of Connecticut Resident Income Tax Return for 1996, federal adjusted gross income shown thereon, $80,535.00.
Plaintiff's Exhibit 10, State of Connecticut Resident Income Tax Return for 1995, filed by the plaintiff and the defendant, indicating federal adjusted gross income, $56,788.00.
Plaintiff's Exhibit 11, Federal U.S. Individual Income Tax Return 1997 CT Page 14771 for the parties indicating wages, salaries, tips, and so forth, $78,097.00.
Plaintiff's Exhibit 12, W-2 Wage and Tax Statement for 1999 for the defendant Randall P. Heath, wages, tips, other compensation from Mallon Chevrolet, $76,580.02.
See also Plaintiff's Exhibit 13 with regard to the breakdown of the weekly income and bonuses.
See Plaintiff's Exhibit 5 and 6, the same being a portion of a certain deposition of the witness Nancy Hallquist on August 21, 2000 as concerns the financial arrangement between the witness and the defendant.
The information set forth in this exhibit tends to confirm the testimony of the witness Hallquist as concerns the periodic amounts that she receives from the defendant incident to his residing with her.
From the plaintiff's financial affidavit the court finds that she is employed as a sales clerk at the Village Bakehouse in Niantic.
Her gross weekly wage is $187.50; deductions totaling $23.34 for a net of $164.16.
She shows weekly expenses of $815.05. The affidavit reflects two debts; one a debt to Dr. Giserman of $100.00 and Child Dental Associates, $800.00.
The plaintiff's only asset as reflected on her financial affidavit appears to be the sum of $200.00 Citizen's Bank checking account.
The court notes that no value is ascribed to any of the furnishings that are in storage.
The defendant's financial affidavit reflects gross weekly wage from Mallon Chevrolet, $1,384.00, deductions totaling $452.00, which include federal tax, social security, state tax, medical and dental insurance for a net of $932.00; weekly expenses of $948.00.
The defendant shows three modest debts, Capitol One, $190.00, an electric bill of $350.00 and a dental bill for the children or the plaintiff, $980.00.
No real estate is listed. No value ascribed to miscellaneous household furnishings. No cash value to any insurance. His 401K plan is listed at $7,654.00 and an escrow account held by counsel of $6,870.00. CT Page 14772
 Discussion
This is a marriage of 17 years duration.
There are three small children issue of this marriage; ages 11, 9 and 7.
The plaintiff has medical problems with her back and resultant disability in part as a result of nerve damage in her left leg and foot.
The plaintiff is age 45. The defendant is age 50.
The defendant's education is somewhat greater than the plaintiff's; having in mind that he has a two-year certificate from college.
This was the second marriage for the defendant and the first for the plaintiff.
The defendant suffers from high blood pressure and depression.
It would appear that there have been longstanding problems in the marriage involving alcohol and substance abuse. The testimony would seem to indicate that the principal offender in that respect was the defendant although the wife acknowledged on occasion the immoderate use of alcohol and participating in controlled substances.
It would appear clearly that the principal cause of the breakdown and the initiation of the petition for dissolution of the marriage was predicated on the relationship which the defendant undertook with the witness Nancy Hallquist and the admitted intimate nature thereof.
The defendant fortunately is in a fairly stable financial position where his earnings are considerable. This in marked contrast to "the situation of the plaintiff whose income is marginal and whose prospects are rather dim.
Having in mind the ages of the three children and the plaintiff's efforts and desires to try and provide as stable a home as possible for them and to guide them in education and allied matters, it would appear that the plaintiff certainly has her hands full with regard to achieving that chore and the near term prospects of her being able to enter the employment market and earn any considerable sums beyond her present earnings is unlikely for the near term.
 The Law
CT Page 14773
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S) § 46b-62 regarding attorney's fees, C.G.S. § 46b-82
regarding alimony and C.G.S. §§ 46b-55, 46b-83 and 46b-84 as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs of the parties.
The court has considered the standards of living of the parties.
As concerns the minor children, the court has considered the children's age, moral character, child care practices, emotional ties of each parent to the child, length and intimacy of the association with the parents and the physical and mental health of the children.
The court has considered the time available as to each parent for the children on a daily basis, the capacity and disposition of both parents to give affection and guidance, to provide financial security, education and religious training.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The court has considered the issue of fault and the court has considered the problems facing the plaintiff with regard to raising three young children under cramped living quarters and with a lack of any substantial financial assets.
The Court enters the following orders.
The plaintiff and the defendant shall share joint legal custody of the three minor children issue of this marital union.
The plaintiff mother shall be the primary custodial parent and the defendant father shall have reasonable and liberal rights of visitation.
The defendant shall pay to the plaintiff as support for the three minor CT Page 14774 boys the sum of $352.00 a week which is in accordance with the guideline worksheet.
The order of support may be by way of immediate wage garnishment.
There are at present no daycare expenses however in the event that in the passage of time expenses of that nature should be incurred incident to the plaintiff trying to better her financial situation, the costs shall be appointed one half to each, the plaintiff and the defendant.
The defendant shall maintain and keep in full force and effect the life insurance which he presently has which admittedly is modest, $20,000.00, and he shall keep in full force and effect the accident and health insurance presently in place; in both instances with the three children being named as the irrevocable beneficiaries.
No evidence having been presented to the court with regard to the insurability or eligibility as to the defendant for other life insurance, the court enters no order incident thereto.
The defendant shall pay alimony to the plaintiff for a period of seven years in the amount of $200.00 per week. The alimony shall be non-modifiable as to term and amount. It shall terminate earlier on the plaintiff's death, remarriage or cohabitation under the provisions of the statute.
The funds presently being held by counsel for the defendant in the neighborhood of $6,870.00, shall become the sole and separate property of the plaintiff petitioner.
The defendant shall maintain and keep in full force and effect medical insurance for the benefit of the three minor boys as available through his place of employment.
Any unreimbursed or uncovered medical, dental, optical, pharmaceutical or psychological expenses shall be apportioned as follows: 42% to the plaintiff and 58% to the defendant.
The defendant shall be entitled to take the three minor children as exemptions for State and Federal tax purposes.
The defendant shall cooperate in maintaining medical insurance for the benefit of the plaintiff through COBRA for the maximum period allowed by law but at her separate cost and expense.
The plaintiff may keep and retain all of the furnishings and appliances CT Page 14775 that are presently in storage which were formally located within the foreclosed residence in Niantic.
Each party shall pay and be responsible for their own counsel and attorney's fees.
As concerns the financial orders entered by the court as to alimony or support, the court has considered the case of Unkelbach v. McNary,244 Conn. 350, with relationship to the funds which the defendant is presently paying to the witness Hallquist.
Both the plaintiff and the defendant shall refrain from making any derogatory comments, one to the other, at any time and particularly the same should not occur in the presence of the three minor children.
There being no motor vehicles registered in the names of either the plaintiff or the defendant, the court enters no order incident thereto.
The defendant may retain his 401K plan with Mallon Chevrolet, which is as yet unvested. The same according to the affidavit being in the amount of $7,654.00.
The parties shall be equally responsible for the two debts shown on the plaintiff's financial affidavit; to wit, Dr. Giserman, balance due $100.00 and the Child Dental Association, balance due $800.00.
The plaintiff may keep and retain the $200.00 balance in the Citizen's checking account.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried pursuant to the provisions of the statute.
Austin, JTR